J-S07014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAAL RISHAL FITZGERALD | : | |
| | : | |
| Appellant | : | No. 818 WDA 2021 |

Appeal from the PCRA Order Entered June 17, 2021
In the Court of Common Pleas of Fayette County Criminal Division at No(s):
CP-26-CR-0001801-2017

BEFORE:   OLSON, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                              **FILED: JUNE 6, 2022**

Appellant, Jamaal Rishal Fitzgerald, appeals from the order entered June 17, 2021, which denied his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1]  Counsel for Appellant, James V. Natale, Esquire filed a petition to withdraw and a no-merit brief pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).[2]  We affirm and grant counsel's petition to withdraw.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] Although counsel styled his brief as having been filed pursuant to **Anders v. California**, 386 U.S. 738 (1967), we note that an **Anders** brief governs the withdrawal of counsel from direct appeal.  Nevertheless, as **Anders** imposes stricter requirements than those set forth in **Turner**/**Finley**, this Court accepts **Anders**-compliant briefs in the context of collateral review. **Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004).

The PCRA court summarized the facts and procedural history of this case as follows:

> On June 23, 2017, [Appellant] contacted the police emergency number stating that he had just shot a friend who attempted to rob him. [Appellant] was at the apartment with his girlfriend when the police arrived. A Glock pistol was recovered from the residence. The victim [ ] was laying in the alley behind the residence beside a Pontiac sedan with multiple gunshot wounds. [Appellant's] girlfriend informed the police that [Appellant] went outside to sell the victim some marijuana. She heard four [] or five [] gun shots. [Appellant] was charged with criminal homicide, [two counts of] aggravated assault, recklessly endangering another person, possession of instruments of crime[,] and possession with intent to deliver.[3]

Trial Court Opinion, 6/17/21, at 1 (extraneous capitalization omitted). Appellant was represented by private counsel throughout proceedings before the trial court.

Appellant proceeded to a guilty plea hearing on January 30, 2019. At his plea hearing, Appellant pleaded guilty to third-degree criminal homicide[4] in exchange for a negotiated sentence of seven-and-one-half to 15 years' incarceration followed by a consecutive two-year probationary period. N.T. Guilty Plea, 1/30/19, at 3. In essence, Appellant admitted that he fired the gunshots that fatally wounded the victim and did not contest that malice could

---

[3] 18 Pa.C.S.A. §§ 2502, 2702(a)(1), 2702(a)(4), 2705, 907(b), and 35 P.S. § 780-113(a)(30), respectively.

[4] Appellant also pleaded guilty to two counts of aggravated assault, possession of instruments of crime, and possession of a small amount of marijuana pursuant to the plea bargain. *See* Trial Court Opinion, 6/17/21, at 2.

2

be inferred from the fact that deadly force was applied to vital parts of the victim's body. *Id.* at 7-8 and 14-16.

Through responses to both oral and written colloquies undertaken during the plea hearing, Appellant acknowledged: his overall satisfaction with representation by trial counsel; his comprehension of the elements of each offense for which he entered a guilty plea; his understanding of the maximum penalty for each offense to which he pled guilty; his understanding of the nature of his plea and the rights he surrendered by entering a guilty plea, including his right to trial by a jury of his peers and his right to a presumption of innocence until found guilty beyond a reasonable doubt by a unanimous jury; his understanding that the entry of a guilty plea waived the right to appeal certain issues; confirmation that he received no promises or threats which caused him to plead guilty; and, that his decision to plead guilty was made voluntarily. *See* Guilty Plea Colloquy, 1/30/19; *see also* N.T. Guilty Plea, 1/30/19, at 5-23. After hearing Appellant's testimony and reviewing Appellant's responses to the foregoing inquiries, the trial court accepted Appellant's guilty plea as knowing and voluntary and immediately imposed the negotiated sentence. *Id.* at 23-25. No post-sentence motions or direct appeals were filed.

On January 27, 2020, Appellant filed a timely *pro se* PCRA petition which asserted various claims alleging that plea counsel was ineffective. Specifically, Appellant alleged that counsel failed to advise him of potential defenses, that

3

counsel failed to investigate and secure certain evidence, and that counsel failed to file certain motions. *See Pro Se* PCRA Petition, 1/27/20. In addition, Appellant alleged that the Commonwealth breached the parties' plea agreement. *See id*.

The PCRA court appointed counsel from the Fayette County Public Defender's Office to represent Appellant. Counsel filed an amended PCRA petition on March 21, 2020, seeking only to correct the charges reflected on Appellant's sentencing order.[5] *See* Amended PCRA Petition, 3/21/20. Thereafter, the PCRA court granted counsel's petition to withdraw and appointed Attorney James V. Natale to represent Appellant.

On August 7, 2020, Attorney Natale filed an amended PCRA petition asserting four grounds for post-collateral relief. First, the amended petition argued that the Commonwealth violated Appellant's constitutional rights by failing to produce exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Amended PCRA Petition, 8/7/20, at 2 (unpaginated).

---

[5] Specifically, Appellant's sentencing order reflected incorrect criminal charges at counts 4, 6, and 7. Amended Petition, 3/21/20, at 2 (unpaginated). The sentencing order at count 4 incorrectly included a charge of "unlawful restraint," rather than a charge for "possession of a weapon." In addition, the sentencing order failed to account for the Commonwealth's agreement to *nolle pros* count 6 (possession with intent to deliver cocaine) and add count 7 (possession of a small amount of marijuana). After lengthy discussion of these changes at the plea hearing, Appellant entered guilty pleas to the amended changes and was sentenced for those offenses. *See* N.T. Guilty Plea, 1/30/19, at 2, 8-11, 12-13, and 23-25. Accordingly, the PCRA court entered an amended sentencing order reflecting the correct charges to which Appellant pled guilty. *See* Amended Sentencing Order, 7/14/20.

Specifically, the **Brady** claim asserted that the Commonwealth failed to disclose: (1) text messages between the victim and his sister; (2) the victim's status as a black belt in martial arts; (3) a broken red brick reportedly recovered from the step where the shooting occurred and supposedly used by the victim to attack Appellant; (4) a statement from a caller offered the week of Appellant's guilty plea hearing; and (5) surveillance footage from a neighboring residence. **Id.** Second, the amended petition asserted that plea counsel was ineffective in failing to visit the crime scene, interviewing potential witnesses, requesting surveillance footage from neighboring residences, or researching the victim's background. **Id.** at 3. This failure prejudiced Appellant because "a thorough investigation could have uncovered exculpatory evidence." **Id.** Third, the amended petition claimed that plea counsel was ineffective because he pressured Appellant to enter a guilty plea, which caused Appellant to enter a plea he would not have otherwise accepted and which precluded Appellant from presenting meritorious defenses at trial. **Id.** at 4. Finally, Appellant argued that plea counsel was ineffective because he failed to seek withdrawal of Appellant's guilty plea after Appellant directed him to do so. **Id.**

The PCRA court conducted an evidentiary hearing on Appellant's second amended petition on March 26, 2021. At the hearing, the PCRA court heard testimony from Appellant, plea counsel, James Geibig, Esquire (the Assistant District Attorney assigned to Appellant's case), and Officer Jamie Holland (the

lead investigator).  The PCRA court denied Appellant's PCRA petition on June 17, 2021.  This appeal followed.[6, 7]

On appeal, the **Turner**/**Finley** brief raises the following issues for our review:

> 1. Whether the Commonwealth violated Appellant's constitutional rights by failing to [disclose] exculpatory evidence, [including]: text messages between the victim and his sister[;] the fact that the victim is a black belt; [a] broken red brick on top of the step where the shooting occurred; [a] statement taken from a caller on the week of January 31, 2019 with information regarding the case; [and] surveillance footage from the neighboring residence?
>
> 2. Whether [plea counsel] was ineffective for failing to conduct a thorough investigation, in particular: never visiting the crime scene; never interviewing any potential witnesses; never requesting surveillance from the neighboring residence; and failing to research the victim's background?
>
> 3. Whether [plea counsel] was ineffective for pressuring [Appellant] to accept a guilty plea?

---

[6] Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Specifically, the record demonstrates that Appellant's counsel filed a concise statement of errors complained of on appeal contemporaneously with his notice of appeal filed on July 12, 2021.  **See Commonwealth v. Snyder**, 870 A.2d 336, 341 (Pa. Super. 2005) (stating, "it is of no moment that appellant was not ordered to file a 1925(b) statement.  Appellant filed his statement contemporaneously with his notice of appeal.  Accordingly, there was no need for the trial court to order him to file a 1925(b) statement.").

[7] Appellant's counsel filed a notice of appeal on July 12, 2021, which was docketed at 818 WDA 2021.  Appellant, however, subsequently filed a *pro se* notice of appeal on July 15, 2021, which was docketed at 831 WDA 2021. After issuing a rule to show cause and receiving counsel's response, this Court dismissed the appeal at 831 WDA 2021 and granted Appellant permission to proceed at 818 WDA 2021 with any issue properly preserved at either docket number.  **See** *Per Curiam* Order, 8/20/21.

4. Whether [plea counsel] was ineffective for failing to file a motion to withdraw [Appellant's] guilty plea after [Appellant] directed [him] to file the motion?

***Turner/Finley*** Brief at 2 (extraneous capitalization omitted).

Prior to addressing the merits of the issues raised in the ***Turner/Finley*** brief, we must determine whether counsel met the procedural requirements necessary to withdraw. Counsel seeking to withdraw in PCRA proceedings

> must review the case zealously. ***Turner/Finley*** counsel must then submit a "no-merit" letter to the [PCRA] court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no[-]merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> Where counsel submits a petition and no-merit letter that satisfy the technical demands of ***Turner/Finley***, the court – [the PCRA] court or this Court – must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

***Commonwealth v. Muzzy***, 141 A.3d 509, 510-511 (Pa. Super. 2016) (citations and corrections omitted).

Here, counsel fulfilled the technical requirements necessary for withdrawing as PCRA counsel. We thus turn to the claims raised in the

***Turner/Finley*** brief, along with Appellant's reply thereto, filed on January 4, 2022.[8]

> In reviewing the grant or denial of PCRA relief, an appellate court considers whether the PCRA court's conclusions are supported by the record and free of legal error. Moreover, the factual findings of a post-conviction court, which hears evidence and passes on the credibility of witnesses, should be given deference. A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts. Indeed, one of the primary reasons PCRA hearings are held in the first place is so that credibility determinations can be made.
>
> \*    \*    \*
>
> [An appellate court] will not disturb the findings of the PCRA court if they are supported by the record, even where the record could support a contrary holding. [The reviewing court's] scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party.

***Commonwealth v. Flor***, 259 A.3d 891, 910-911 (Pa. 2021) (quotation marks, citations, and corrections omitted).

In his first claim, Appellant asserts that the Commonwealth violated his constitutional rights by withholding exculpatory evidence. ***Turner/Finley***

---

[8] To the extent Appellant attempts to raise an excessive sentence claim within his reply to counsel's ***Turner/Finely*** brief, Appellant failed to raise this claim before the PCRA court. ***See*** Pa.R.A.P. 302(a) (noting that issues cannot be raised for the first time on appeal). Moreover, "[o]ne who pleads guilty and receives a negotiated sentence may not then seek discretionary review of that sentence." ***Commonwealth v. O'Malley***, 957 A.2d 1265, 1267 (Pa. Super. 2008); ***see also Commonwealth v. Wrecks***, 934 A.2d 1287, 1289 (Pa. Super. 2007) ("Requests for relief with respect to the discretionary aspects of sentencing are not cognizable in PCRA proceedings.").

Brief at 12. Specifically, Appellant's **Brady** claim involves the Commonwealth's alleged failure to disclose the following pieces of evidence:

1. text messages between the victim and his sister;

2. the fact that the victim is a black belt in a form of martial arts;

3. a broken red brick on top of the step where the shooting occurred;

4. a statement taken from a caller during the week of January 31, 2019 with information regarding the case; and

5. surveillance footage from the neighboring residence.

**Id.**

> To prove a **Brady** violation, an appellant must demonstrate that: (1) the prosecution concealed evidence; (2) which evidence was either exculpatory or impeachment evidence favorable to him; and (3) he was prejudiced by the concealment. In order to prove prejudice [an a]ppellant must show a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Stated differently, the undisclosed evidence must be material to guilt or punishment.

**Commonwealth v. Bomar**, 104 A.3d 1179, 1189-1190 (Pa. 2014) (internal alterations, quotation marks, and citations omitted). Materiality involves more than the "mere possibility that an item of undisclosed information might have helped the defense." **Commonwealth v. Haskins**, 60 A.3d 538, 547 (Pa. Super. 2012) (citation omitted).

Importantly, courts will not find a **Brady** violation where the evidence at issue is available to the defense from non-governmental sources. **See Commonwealth v. Tedford**, 960 A.2d 1, 30 (Pa. 2008). In other words, there is no violation "when the appellant knew or, with reasonable diligence,

could have uncovered the evidence in question." ***Commonwealth v. Trieber***, 121 A.3d 435, 461 (Pa. 2015).

The PCRA court determined Appellant's ***Brady*** claim was meritless. It found:

> [Appellant] presented evidence regarding the red brick when his counsel introduced a photograph of the brick during a preliminary hearing. As such[, Appellant] had this information from his own witnesses and provided it to the Commonwealth. [Attorney Geibig] testified for the Commonwealth that it did not have any other photographs in the file regarding the red brick. In addition, [Appellant] did not take his case to trial but rather entered into a plea agreement, he failed to establish how the lack of this information impacted the voluntariness of his plea. [Attorney Geibig] further testified that he had no information that the victim was a black belt. During the PCRA hearing, [Appellant] presented no evidence that the victim was in fact a black belt. Nor did he explain how this information impacted his plea. [Attorney Geibig] credibly testified that the Commonwealth had provided [Appellant] with all text messages in its possession. No copies of un[disclosed] text messages were presented nor did [Appellant adduce] testimony from witnesses regarding [] undisclosed text messages. [Appellant's] further assertion that there was an undisclosed telephone call on January 31, 2019 was not supported by any evidence that such a call even existed. It is not enough for [Appellant] to just assert violations without providing evidence supporting that the evidence actually existed. For these reasons, this issue is without merit.

PCRA Court Opinion, 6/17/21, at 4.

Upon review, we conclude the PCRA court's findings enjoy record support. Based on the record, including the testimony at the PCRA hearing, Appellant offered no proof of undisclosed evidence or, alternatively, Appellant possessed independent knowledge of such evidence.

10

Regarding the text messages between the victim and his sister, Attorney Geibig testified that he turned over all text messages to the defense. N.T. PCRA Hearing, 3/26/21, at 25. Officer Holland explicitly remembered turning over text messages between the victim and his sister, and plea counsel confirmed that he and Appellant received and reviewed those text messages *Id.* at 16, 29-30. Moreover, Appellant stated that he knew the nature of the text messages because the victim's sister referred to them in her written statement that the Commonwealth disclosed to him. *Id.* at 3-4. Therefore, Appellant failed to prove that any text messages were withheld by the Commonwealth.

Regarding the victim holding black belt status in a martial arts discipline, Appellant had independent and personal knowledge of this fact from the victim himself. *See id.* at 4 (confirming Appellant's friendship status with the victim and Appellant's knowledge that victim was a black belt). Plea counsel explained that "whether or not the kid was a black belt in karate given the distance at least of some of the five shots really didn't have any relevance." *Id.* at 20. Therefore, no violation can be found because Appellant knew of the evidence and could not establish the materiality of this information.

Similarly, regarding evidence of the red brick at the top of the steps, Appellant obtained information about the brick through nongovernmental means. The uncontradicted testimony was that the defense introduced evidence of the red brick at the preliminary hearing via a photograph taken

by Appellant's mother. *Id.* at 10, 25. Furthermore, Officer Holland compared the photograph with those taken by the Pennsylvania State Police Forensic Service Unit, and testified that the red brick was not shown in any of the original photographs of the crime scene. *Id.* at 30. Therefore, Appellant had independent knowledge of the red brick and failed to demonstrate the authenticity or materiality of the red brick photograph necessary to establish a *Brady* violation.

Regarding a purported statement taken from a caller, Appellant failed to enter any evidence at the PCRA hearing to establish that such a call occurred, the identity of the caller, or if the information was helpful to the defense. *See Haskins*, *supra* (the "mere possibility that an item of undisclosed information might have helped the defense" is insufficient to establish materiality necessary to prove a *Brady* violation).

Regarding purported surveillance footage, the unequivocal testimony of the PCRA hearing demonstrated that no such footage existed. Appellant testified that he did not know if any video existed. *Id.* at 5-6. Plea counsel explained that one of the first things he does upon beginning a case is to investigate whether any video footage exists and preserves that evidence. *Id.* at 15, 21. In this case, he testified that he was not advised of any footage, and Appellant explained to him that "the alley was dark and that he didn't think there would be any chance of anything showing anything." *Id.* at 21. Officer Holland confirmed that there was no video surveillance in the vicinity.

***Id.*** at 31. He testified that the only building that Appellant could have been referring to did not have external cameras. ***Id.***

Therefore, based on the totality of the record, Appellant cannot demonstrate that his ***Brady*** claim has any basis in fact that the Commonwealth withheld any of the purported evidence, how such evidence was favorable to him, or how possessing such evidence would have resulted in his choice to go to trial rather than enter into the plea agreement. As detailed above, Appellant agreed to plead guilty to third-degree murder in exchange for a negotiated sentence. None of the evidence Appellant lists renders such a choice involuntary, unintelligent, or unknowing. Thus, Appellant's first claim affords him no relief.

In his remaining three issues, Appellant argues that plea counsel's ineffectiveness caused him to enter invalid guilty pleas.

> In order to obtain relief based on an [ineffective assistance of counsel] claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error. Trial counsel is presumed to be effective, and [an a]ppellant bears the burden of pleading and proving each of the three factors by a preponderance of the evidence.

> The right to constitutionally effective assistance of counsel extends to counsel's role in guiding his client with regard to the consequences of entering into a guilty plea. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the

voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. Thus, to establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. The reasonable probability test is not a stringent one; it merely refers to a probability sufficient to undermine confidence in the outcome.

[Central] to the question of whether a defendant's plea was entered voluntarily and knowingly is the fact that the defendant know[s] and understand[s] the nature of the offenses charged in as plain a fashion as possible. A guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, a trial judge and, by extension, plea counsel is not required to go to unnecessary lengths to discuss every nuance of the law regarding a defendant's waiver of his right to a jury trial in order to render a guilty plea voluntary and knowing.

***Commonwealth v. Barndt***, 74 A.3d 185, 191- 193 (Pa. Super. 2013)

(cleaned up; quotation marks and citations omitted). Moreover,

[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing. He bears the burden of proving otherwise.

\* \* \*

The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

\* \* \*

A defendant who elects to plead guilty has a duty to answer questions truthfully. We cannot permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

***Commonwealth v. Yeomans***, 24 A.3d 1044, 1047 (Pa. Super. 2011) (citations omitted). "The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty: All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made." ***Commonwealth v. Timchak***, 69 A.3d 765, 770 (Pa. Super. 2013) (internal citations and brackets omitted).

First, Appellant asserts that plea counsel was ineffective for failing to conduct a thorough investigation. ***See Turner/Finley*** Brief at 17. This claim is unavailing. As the PCRA court explained: "[Appellant's] assertion that his counsel failed to conduct a thorough investigation was not supported by any evidence as previously stated[,] as he also asserted the evidence not turned over by the Commonwealth was also the basis of his claim of ineffectiveness." PCRA Court Opinion, 6/17/21, at 5. Indeed, as our Supreme Court has previously observed, boilerplate ineffective assistance claims, composed of recast (but meritless) ***Brady*** claims, lack arguable merit. ***See Tedford***, 960 A.2d at 31.

Next, Appellant contends that plea counsel pressured him into accepting the guilty plea. ***Turner/Finley*** Brief at 17. Appellant alleged at the PCRA hearing that counsel threatened him with an "ultimatum to take seven and a half years for a more severe crime than the actual crime that was committed" or else the court would sentence him to the "max penalty" because the judge was a prior district attorney. N.T. PCRA Hearing, 3/26/21, at 7. Within his

oral and written guilty plea colloquies, Appellant stated he was satisfied with counsel's services and noted that "[n]o threats have been made against me for the purpose of causing me to plead guilty." **See id.** at 5-23; **see also** Guilty Plea Colloquy, 1/30/19, at 3. Appellant is bound by the statements he made during his oral and written guilty plea colloquies attesting to the absence of threats and his satisfaction with counsel's services and he may not now contradict those statements to seek relief. **See Yeomans**, **supra**; **see also Commonwealth v. Jabbie**, 200 A.3d 500, 506 (Pa. Super. 2018). Appellant's claim fails.

In his last ineffective assistance of counsel claim, Appellant argues that plea counsel failed to file a motion to withdraw Appellant's guilty plea after Appellant directed him to do so. **Turner**/**Finley** Brief at 17. This Court previously determined:

> [o]ur law is clear that, to be valid, a guilty plea must be knowingly, voluntarily[,] and intelligently entered. There is no absolute right to withdraw a guilty plea, and the decision as to whether to allow a defendant to do so is a matter within the sound discretion of the trial court. To withdraw a plea after sentencing, a defendant must make a showing of prejudice amounting to manifest injustice. A plea rises to the level of manifest injustice when it was entered into involuntarily, unknowingly, or unintelligently. A defendant's disappointment in the sentence imposed does not constitute manifest injustice.

**Commonwealth v. Pollard**, 832 A.2d 517, 522-523 (Pa. Super. 2003) (internal citations and quotations omitted).

The PCRA court opined:

16

> A guilty plea may be withdrawn after sentencing only upon a showing of prejudice on the level of manifest injustice. The plea colloquy fully informed [Appellant] of his rights, the charges he was pleading to, the maximum sentences for each charge, the extent of his bargain, and also covered a possible defense. [Appellant] failed to make a showing of manifest injustice such that the [c]ourt would permit him to withdraw his plea, thus he failed to meet his burden on this issue.

PCRA Court Opinion, 6/17/21, at 6.

In this case, the crux of Appellant's argument is not that his negotiated guilty plea was involuntarily or unintelligently entered. Appellant explained his desire to withdraw his plea as follows:

> [After entering the guilty plea,] I had a guilty conscious the next day and I had called my attorney and I was pretty much in fear because it weighed heavy on me that I can't accept the fact that I'm taking a charge that I don't deserve for less time. I wouldn't be honest with myself if, I do not feel as if I murdered a friend of mine. That's pretty much how I put it to him and I cannot say that I did murder him in its technical term. Now I could understand maybe a manslaughter due to a fight and the death resulting because of the fight but I am not, a murder to me is a coldblooded killing and I cannot live with that. So that's pretty much how I put it to him the next day.

N.T. PCRA Hearing, 3/26/21, at 8. Appellant further testified, "I am guilty of taking his life away and I feel guilty of taking his life away[,] but this was not a murder[.]" *Id.* at 12.

As plea counsel explained, Appellant's desire to withdraw his plea arose from the title of the charge (third-degree murder), not the sentence he received. *Id.* at 18 ("[w]here the issue lied was[,] it wasn't so much the sentence that was the concern[,] it was the sentence pursuant to third degree instead of a voluntary manslaughter[. B]asically speaking[,] that was the

17

question, the number versus the title. [] He ultimately pled guilty to a third degree murder but he pled guilty to seven to [15] years."). Plea counsel explained that, after sentencing, Appellant called to withdraw his plea because "[h]e wanted the title changed from a murder to a manslaughter[.]" *Id.* at 19. He explained to Appellant this is not a basis for appeal or withdrawal of his plea because "[y]ou can't say I want to keep the sentence but change the charge." *Id.* at 20.

As reflected in the certified record, Appellant signed a written guilty plea colloquy and engaged in an extensive and specifically tailored oral colloquy at the January 30, 2019 guilty plea hearing. Within those colloquies, Appellant acknowledged that he understood the crimes with which he was charged and confirmed his agreement to plead guilty to third-degree murder, the maximum penalty for which was 40 years' imprisonment. Appellant also understood that he agreed to plead guilty in exchange for a negotiated sentence of seven-and-one-half to 15 years. He confirmed his understanding of the rights and defenses he waived by entering into the plea agreement. He also confirmed his satisfaction with plea counsel's services and acknowledged that he had opportunities to consult with counsel before making the decision to plead guilty.

We conclude that Appellant's guilty plea and corresponding judgment of sentence does not rise to the level of manifest injustice necessary to support the withdrawal of his guilty plea. Appellant's displeasure with the title of his

conviction does not render his plea unknowing, involuntary, or unintelligent. ***Timchak***, ***supra***. Consequently, plea counsel cannot be held ineffective for failing to raise a meritless issue. ***Commonwealth v. Montalvo***, 204 A.3d 274, 286 (Pa. 2019). Accordingly, Appellant's claim of ineffectiveness, based upon the failure to file a motion to withdraw a guilty plea, is meritless.

Finally, after an independent review of the record, we find no meritorious issues that have been preserved for our review. Accordingly, we agree with counsel that Appellant's PCRA petition is meritless, grant counsel's petition to withdraw, and affirm the PCRA court's order dismissing Appellant's PCRA petition.

Petition to withdraw granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/6/2022

19